**VISTO CORPORATION, Plaintiff,**

v.

**SPROQIT TECHNOLOGIES, INC., Defendant.**

No. C–04–0651 EMC.

United States District Court, N.D. California.

March 17, 2005.

Ronald S. Katz, Robert D. Becker, Shawn G. Hansen, Eugene L. Hahm, Manatt, Phelps & Phillips LLP, Palo Alto, CA, for Plaintiff.

Theresa K. Hankes, Dorsey & Whitney LLP, San Francisco, CA, Devan Padmanabham, George Eck, Gerald H. Sullivan, Paul Robbennolt, Todd R. Trumpold, Dorsey & Whitney LLP, Minneapolis, MN, for Defendant.

**ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS (Docket No. 51)**

CHEN, United States Magistrate Judge.

Plaintiff Visto Corporation has sued Defendant Sproqit Technologies, Inc. for infringement of Visto's '192 patent. In turn, Sproqit has filed counterclaims against Visto for (1) declaration of noninfringement and invalidity of the '192 patent, (2) declaration of noninfringement and unenforceability of another patent (the '708 patent), (3) tortious interference with prospective economic advantage, and (4) defamation. In this motion to dismiss, Visto challenges the state law claims for tortious interference and defamation. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court here GRANTS the motion to dismiss without prejudice.

## I. FACTUAL & PROCEDURAL BACKGROUND

In its counterclaims, Sproqit alleges, *inter alia*, the following facts:

(1) "On numerous occasions, Visto has expressed an interest in acquiring Sproqit [but] Sproqit has not agreed to the acquisition." Countercl. ¶ 6. Visto told Sproqit at one point that, if it did not agree to the acquisition, then Visto would file suit for patent infringement. *See id.* ¶ 8.

(2) "Visto has threatened to bring a patent infringement lawsuit against Sproqit alleging that Sproqit has infringed the '192 Patent and [the '708 Patent]." *Id.* ¶ 7. The allegations of patent infringement are baseless. *See id.* ¶ 29. Visto has made these threats (1) to disrupt financing of Sproqit "and thereby to facilitate Visto's desired acquisition of Sproqit" and (2) to interfere with Sproqit's prospective business relationships with potential customers such as Vodafone Group PLC. *Id.*

(3) Visto has now actually filed suit alleging infringement of the '192 Patent. *See id.* ¶ 9.

## II. DISCUSSION

### A. Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R.Civ.P. 12(b)(6). For such a motion, the court must accept the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *See Janas v. McCracken (In re Silicon Graphics Sec. Litig.)*, 183 F.3d 970, 983 (9th Cir.1999). Dismissal is improper "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

In the instant case, both parties have filed and/or referred to declarations in support of their respective positions on the motion to dismiss. Under Rule 12(b), "[i]f, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and *not* excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed.R.Civ.P. 12(b) (emphasis added). The Court shall not convert Visto's motion to dismiss to a motion for summary judgment and thus shall not consider any matters outside the pleading, including the above-referenced declarations.

### B. Independent Wrongful Conduct

The California Supreme Court laid out the elements for a claim of intentional interference with prospective economic advantage in *Della Penna v. Toyota Motor Sales, USA, Inc.*, 11 Cal.4th 376, 45 Cal.Rptr.2d 436, 902 P.2d 740 (1995). Those elements are as follows: (1) an economic relationship between the plaintiff and third party containing the probability of future economic benefit to the plaintiff, (2) knowledge by the defendant of the existence of the relationship, (3) intentional acts on the part of the defendant designed to disrupt the relationship, (4) actual disruption of the relationship, and (5) damages to the plaintiff proximately caused by the acts of the defendant. *See id.* at 389, 45 Cal.Rptr.2d 436, 902 P.2d 740. In addition, "a plaintiff seeking to recover for an alleged interference with prospective contractual or economic relations must plead and prove as part of its case-in-chief that the defendant not only knowingly interfered with the plaintiff's expectancy, but

*engaged in conduct that was wrongful by some legal measure other than the fact of interference itself."* *Id.* at 393, 45 Cal. Rptr.2d 436, 902 P.2d 740 (emphasis added); *see also National Med. Transp. Network v. Deloitte & Touche,* 62 Cal.App.4th 412, 439–40, 72 Cal.Rptr.2d 720 (1998) (noting that requirement of independent wrongfulness applies to both intentional and negligent interference claims). According to Visto, Sproqit has failed to allege the last element, *i.e.,* independently wrongful conduct, and the fourth element, *i.e.,* actual disruption of the relationship.

"Although the California courts have not provided a definitive meaning of 'wrongful' conduct, in *Bed, Bath & Beyond v. La Jolla Village Square Venture Partners,* 52 Cal.App.4th 867, 60 Cal.Rptr.2d 830 (1997), the California Court of Appeal acknowledged that various courts have defined that phrase as follows: (1) conduct that is independently tortious or a restraint of trade; (2) conduct violating a statute, regulation, a recognized rule of common law, or an established standard of a trade or profession,[1] or (3) conduct that is illegal, unfair, or immoral according to common understandings of society." *Formula One Licensing, B.V. v. Purple Interactive Ltd.,* No. C 00–2222 MMC, 2001 U.S. Dist. LEXIS 2968, at *14 (N.D.Cal. Feb. 6, 2001); *Gemini Aluminum,* 95 Cal.App.4th at 1258–59, 116 Cal.Rptr.2d 358 (characterizing the following as wrongful conduct: where actions of defendant are out of the ream of legitimate business transactions or constitute a violation of a statute or a tort such as fraud or unfair competition). "The focus for determining the wrongfulness of the defendant's intentional acts 'should be on the defendant's objective conduct, and evidence of motive or other subjective states of mind is relevant only to illuminating the nature of the conduct.' Thus, lawful conduct that is 'motivated by a black desire to hurt the plaintiff's business' does not necessarily constitute wrongful conduct." *Sebastian Internat'l v. Russolillo,* 128 F.Supp.2d 630, 637 (C.D.Cal.2001) (quoting *Arntz Contracting Co. v. St. Paul Fire & Marine Ins.,* 47 Cal.App.4th 464, 477, 54 Cal.Rptr.2d 888 (1996)); *see also Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal.4th 1134, 1159 n. 11, 131 Cal.Rptr.2d 29, 63 P.3d 937 (2003) (stating that independently wrongful act "must be wrongful by some legal measure, rather than merely a product of an improper, but lawful, purpose or motive").

■ Given the above standard, Sproqit has alleged—at least in theory—the element of independently wrongful conduct because it has alleged that Visto's allegations of patent infringement are false and/or defamatory. *See* Countercl. ¶ 34 ("Visto knew, or should have known, that its allegations of patent infringement by Sproqit were unsupported or false."); *PMC, Inc. v. Saban Enter., Inc.,* 45 Cal. App.4th 579, 602, 52 Cal.Rptr.2d 877 (1996) (stating that commonly included as independently wrongful conduct is violence, misrepresentation, unfounded litigation, defamation, trade libel or trade mark infringement), *overruled on other grounds by Korea Supply,* 29 Cal.4th at 1159 n. 11, 131 Cal.Rptr.2d 29, 63 P.3d 937.

### C. *Actual Disruption of Relationship*

Visto argues that not only has Sproqit failed to allege independently wrongful conduct but it has also failed to allege actual disruption of a relationship with a third party. Sproqit has probably alleged

---

1. *But see Gemini Aluminum Corp. v. California Custom Shapes,* 95 Cal.App.4th 1249, 1258, 116 Cal.Rptr.2d 358 (2002) (concluding that "industry standards" test does not satisfy requirement that defendant's conduct was wrongful by some legal measure other than the fact of interference itself).

enough to meet this element by stating that Visto's actions "are intended to, *and have,* interfered with Sproqit's existing and prospective relationships with customers and investors." Countercl. ¶ 29 (emphasis added).

### D. *California Litigation Privilege*

In its motion, Visto argues that both Sproqit's claim for tortious interference with prospective economic advantage and its claim for defamation should be dismissed because Visto's actions are protected by the California litigation privilege.

 California Civil Code § 47(b) provides in part that "[a] privileged publication or broadcast is one made ... [i]n any ... judicial proceeding." Cal. Civ. Code § 47(b). This privilege is absolute, not qualified. *See Silberg v. Anderson,* 50 Cal.3d 205, 215, 266 Cal.Rptr. 638, 786 P.2d 365 (1990). It applies to any communication (1) made in a judicial or quasi-judicial proceeding, (2) by litigants or other participants authorized by law, in or out of court, (3) to achieve the objects of litigation, (4) and which has some connection or logical relation to the action. *See id.* at 212, 266 Cal.Rptr. 638, 786 P.2d 365. Courts have routinely held that the privilege "applies to prelitigation communications as well as those occurring during the course of actual litigation." [2] *Nguyen,* 69 Cal.App.4th at 147, 81 Cal.Rptr.2d 392; *see also Rubin v. Green,* 4 Cal.4th 1187, 1194, 17 Cal.Rptr.2d 828, 847 P.2d 1044 (1993) (acknowledging that communications with some relation to an *anticipated* lawsuit are within the privilege); *Lerette v. Dean Witter Org'n, Inc.,* 60 Cal.App.3d 573, 575, 577–78, 131 Cal.Rptr. 592 (1976) (holding that demand letter such as that sent by

defendant was "fully privileged ... as preliminary to a judicial proceeding"; demand letter stated that, unless settlement could be reached, defendant planned to sue plaintiff for violation of federal and state securities laws and for fraud and misrepresentation). The principal purpose of the privilege is to afford litigants and witnesses the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions. *See id.* at 213, 266 Cal.Rptr. 638, 786 P.2d 365. It is a defense to a number of torts, including intentional interference and defamation. *See Rothman v. Jackson,* 49 Cal. App.4th 1134, 1140, 57 Cal.Rptr.2d 284 (1996) (stating that only malicious prosecution actions are exempt from § 47(b)). Pre-litigation demands in anticipation of litigation "are protected as part of the price paid for affording litigants the utmost freedom of access to the courts." *Fuhrman v. California Satellite Systems,* 179 Cal.App.3d 408, 422 n. 5, 231 Cal.Rptr. 113 (1986), *overruled on other grounds in silberg,* 50 Cal.App.3d at 212, 123 Cal.Rptr. 353. Indeed, one court has suggested that counsel may well have a duty to try to resolve a dispute without first filing suit and that to do so is consistent with "well established legal practice." *Lerette v. Dean Witter Organization,* 60 Cal.App.3d 573, 577, 131 Cal.Rptr. 592 (1976).

Visto argues that the litigation privilege applies in the instant case because its alleged tortious interference consisted simply of prelitigation communications. In response, Sproqit asserts that prelitigation communications are privileged only if "they are made in relation to a proceeding that 'is contemplated in good faith and under serious consideration.'" Opp'n at 6

---

2. "This privilege is absolute, not qualified, even when prelitigation communications are implicated." *Nguyen v. Proton Technology Corp.,* 69 Cal.App.4th 140, 145, 81 Cal. Rptr.2d 392 (1999); *see also Aronson v. Kin-*

*sella,* 58 Cal.App.4th 254, 264, 68 Cal.Rptr.2d 305 (1997) (explaining that the term "qualified" was used in another case in a colloquial sense, not a technical sense).

(quoting *Eisenberg v. Alameda Newspapers, Inc.*, 74 Cal.App.4th 1359, 1378, 88 Cal.Rptr.2d 802 (1999)). In its complaint, Sproqit alleges that Visto's allegations of patent infringement were baseless, "designed to disrupt financing of Sproqit and interfere with Sproqit's prospective business relationships with potential customers." Countercl. ¶ 9.

It is true that prelitigation communications are privileged only if made in connection with proposed litigation contemplated in good faith and under serious consideration. However, Sproqit misconstrues the good faith requirement. It is the *contemplation* of litigation that must be in good faith, not the merits of the actual litigation itself that animates the litigation privilege. As pointed out by the court in *Aronson v. Kinsella*, 58 Cal.App.4th 254, 68 Cal. Rptr.2d 305 (1997), the "genesis of the [good faith and serious consideration] test is the Restatement Second of Torts, section 586, comment e,[3] which seeks to prevent application of the privilege when the statements are made at a time *when the possibility of litigation is not seriously considered.*" *Id.* at 266, 68 Cal.Rptr.2d 305 (emphasis added).

The court in *Fuhrman v. California Satellite Systems, supra,* 179 Cal.App.3d at 422 n. 5, 231 Cal.Rptr. 113 (1986) was more explicit.

> It is important to distinguish between the lack of a good faith intention to bring a suit and publications which are made without a good faith belief in their truth, *i.e.*, malicious publications. The latter, when made in good faith anticipation of litigation are protected as part of the price paid for

affording litigants the utmost freedom of access to the courts. This policy consideration is not advanced, however, when the person publishing an injurious falsehood is not seriously considering litigation. In such a case, the publication has not "connection or logical relation" to an action and is not made "to achieve the objects" of any litigation. No public policy supports extending a privilege to persons who attempt to profit from hollow threats of litigation.

*Id.* at 422 n. 5. *See also Financial Corp. of Am. v. Wilburn,* 189 Cal.App.3d 764, 778, 234 Cal.Rptr. 653 (1987) ("If this state of mind exists [*i.e.,* actual good faith contemplation of litigation], a groundless statement is privileged."); *cf. Blanchard v. DirecTV, Inc.,* 123 Cal.App.4th 903, 921, 20 Cal.Rptr.3d 385 (2004) (stating that DirecTV did have good faith belief in legal viability of its claim but that, "[m]ore important, 'communications made in connection with litigation do not necessarily fall outside the privilege merely because they are, or are alleged to be, fraudulent, perjurious, unethical, or even illegal' assuming they are logically related to litigation").

Sproqit argues there is an issue of fact as to whether Visto had in fact contemplated litigation seriously and in good faith based. Sproqit contends there is evidence Visto did not have such a good faith intent, citing: (1) Visto's failure to sue on one of the patents identified in a demand letter as being infringed upon (*i.e.,* the '708 patent) and (2) Visto's failure to file suit against Sproqit (letting a deadline pass) until after Sproqit filed suit first in Minnesota. Although Sproqit did not include any such

---

**3.** Comment e to the Restatement Second of Torts § 568 states: "As to communications preliminary to a proposed judicial proceeding the rule stated in this Section applies only when the communication has some relation to a proceeding that is contemplated in good faith and under serious consideration. The bare possibility that the proceeding might be instituted is not to be used as a cloak to provide immunity for defamation when the possibility is not seriously considered." Rest. (2d) Torts § 586.

allegations in its counterclaims, this fact is not dispositive. California case law indicates that "[i]t is not necessary that plaintiff allege the [prelitigation communications] were not published in good faith and serious contemplation of litigation. A plaintiff is not required to plead negative facts to anticipate a defense." *Fuhrman,* 179 Cal.App.3d at 423, 231 Cal.Rptr. 113.

In response, Visto contends in turn that the good faith and consideration test could not save Sproqit because the test is not applicable when the prelitigation communications consists of demand letters written by counsel followed by actual litigation. In support of this argument, Visto cites *Lerette,* 60 Cal.App.3d at 575, 577–78, 131 Cal.Rptr. 592 (holding that demand letter such as that sent by defendant was "fully privileged ... as preliminary to a judicial proceeding"; demand letter stated that, unless settlement could be reached, defendant planned to sue plaintiff for violation of federal and state securities laws and for fraud and misrepresentation), and *Dove Audio v. Rosenfeld,* 47 Cal.App.4th 777, 781, 54 Cal.Rptr.2d 830 (1996) (noting that the litigation privilege "applies to communications preliminary to a proposed judicial proceeding, such as a demand letter from an attorney to a potential adversary"; citing *Lerette* ). However, in neither *Lerette* nor *Dove Audio* did the court discuss the good faith and serious consideration test; the test was simply not an issue in either case. Moreover, as the court in *Fuhrman* summarized, [t]here was no question the letter was sent in serious contemplation of litigation and was connected to a judicial proceeding. *Fuhrman,* 179 Cal.App.3d at 423 n. 7, 231 Cal.Rptr. 113. It appears that the conclusions reached in *Lerette* was fact-based and not predicated on a *per se* rule. Thus, Visto's reliance on *Lerette* and *Dove Audio* is unavailing.

■ At the bottom, the California courts "still require that for the privilege to attach to demand letters they must be sent in good faith and actual contemplation of litigation." *Newman v. Checkrite Cal., Inc.,* 912 F.Supp. 1354, 1374 (E.D.Cal. 1995). That determination may turn on a triable issue of fact, depending upon the circumstances.

> Although "[t]he classic example of an instance in which the privilege would attach to prelitigation communications is the attorney demand letter threatening to file a lawsuit if a claim is not settled," it is not the mere *threat* of litigation that brings the privilege into play, but rather the actual good faith contemplation of an imminent, impending resort to the judicial system for the purposes of resolving a dispute. "[B]ecause the privilege does not attach prior to the actual filing of a lawsuit unless and until litigation is seriously proposed *in good faith* for the purpose of resolving the dispute, even a threat to commence litigation will be insufficient to trigger application of the privilege if it is actually made as a means of inducing settlement of a claim and not in good faith contemplation of a lawsuit. This is a question of fact that must be determined before the privilege is applied."

*Eisenberg,* 74 Cal.App.4th at 1379–80, 88 Cal.Rptr.2d 802 (emphasis in original).

That a subsequent suit ensued is certainly a factor. *Cf. Laffer,* 34 Cal.App.4th at 124, 40 Cal.Rptr.2d 233 (one factor supporting inference of lack of good faith is subsequent failure to file suit). But here, Sproqit has raised enough of a question, at least at the stage of a motion to dismiss under Rule 12(b)(6), to preclude dismissal. Even if Sproqit's claims cannot be dismissed because of the litigation privilege under Civil code Section 47(b), they may nonetheless be premature. The Court asked both parties to provide supplemental briefing on this matter, taking into account

two cases in particular, namely, *Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal.3d 1118, 270 Cal.Rptr. 1, 791 P.2d 587 (1990) [hereinafter *PG & E* ], and *Formula One Licensing, B.V. v. Purple Interactive Ltd.*, No. C 00–2222 MMC, 2001 U.S. Dist. LEXIS 2968 (N.D.Cal. Feb. 6, 2001).

E. *Procedural Conditions Under PG & E v. Bear Stearns*

■ In *PG & E*, PG & E sued Bear Stearns, in investment brokerage firm, for, *inter alia,* intentional interference with contractual relations and with prospective business advantage. *See PG & E*, 50 Cal.3d at 1124, 270 Cal.Rptr. 1, 791 P.2d 587. The facts underlying the claims were as follows: PG & E and the Placer County Water Agency had a long-term contract under which PG & E bought hydroelectric power from the Agency. *See id.* However, as energy prices rose, the Agency wanted to terminate the contract early so that it could sell its hydroelectric power in a more favorable market. *See id.* The Agency was concerned that it could not terminate the contract without breaching, but Bear Stearns eventually convinced the Agency to enter into contract under which Bear Stearns would look into the feasibility of terminating the contract with PG & E in return for a percentage of any resulting increase in the Agency's revenues. *See id.* Subsequently, the Agency asked for arbitration under the contract with PG & E to determine whether the Agency could terminate the contract; PG & E responded with several lawsuits, including this one against Bear Stearns. *See id.*

Bear Stearns filed a demurrer in response to PG & E's lawsuit. The California Supreme Court addressed two issues: (1) "whether inducing a party to a contract to seek to terminate the contract according to its terms is ever actionable interference" and (2) "whether actual interference is adequately alleged when the interfer-

ence consists of inducing litigation on the contract [as opposed to actual or inevitable breach of the contract]." *Id.* at 1126, 270 Cal.Rptr. 1, 791 P.2d 587. The court concluded that "it may be actionable to induce a party to a contract to terminate the contract according to its terms"; furthermore, "interference which makes enjoyment of a contract more expensive or burdensome may be actionable." *Id.* at 1127, 270 Cal.Rptr. 1, 791 P.2d 587. However, the court then held that it was not proper "to impose liability for inducing a potentially meritorious lawsuit." *Id.*

The California Supreme Court arrived at this last conclusion by explaining that, "[u]nder existing law, the only common law tort claim that treats the instigation or bringing of a lawsuit as an actionable injury is the action for malicious prosecution. . . . The bringing of a colorable claim is not actionable; plaintiff in a malicious prosecution action must prove that the prior action was brought without probable cause and was pursued to a legal termination in plaintiff's favor." *Id.* at 1130–31, 270 Cal.Rptr. 1, 791 P.2d 587. The court placed special emphasis on the requirement of probable cause, which was "essential to assure free access to the courts." *Id.* at 1131, 270 Cal.Rptr. 1, 791 P.2d 587. Indeed, "[t]he policy of encouraging free access to the courts is so important that the litigation privilege extends beyond claims of defamation to claims of abuse of process, intentional infliction of emotional distress, negligent misrepresentation, invasion of privacy, fraud, and . . . interference with contract and prospective economic advantage. In fact, the privilege applies to any action except for one for malicious prosecution." *Id.* at 1132, 270 Cal.Rptr. 1, 791 P.2d 587. Given the importance of assuring free access to the courts, it would be "repugnant" to allow a claim for intentional interference when the only interference was the inducing of potentially meritorious litigation. *Id.* at 1137, 270 Cal.

Rptr. 1, 791 P.2d 587. "To permit a cause of action for interference ... to be based on inducing potentially meritorious litigation on the contract would threaten free access to the courts by providing an end run around the limitations on the tort of malicious prosecution." *Id.* The Court therefore concluded that "a plaintiff seeking to state a claim for intentional interference with contract or prospective economic advantage because defendant induced another to undertake litigation, must allege that the litigation was brought without probable cause and that the litigation concluded in plaintiff's favor." *Id.*

In *Formula One,* 2001 U.S. Dist. LEXIS 2968, Judge Chesney applied the holding of *PG & E* to the facts in the case before her. In this case, the counter-plaintiff alleged that the counter-defendant interfered with its existing and prospective economic advantage by asserting in its complaint baseless trademark infringement claims. *See id.* at *15. Relying on PG & E, Judge Chesney stated that, to the extent the counter-plaintiff's claims were based on the initiation of the lawsuit by counter-defendant, "such claims [were] premature"; the counter-plaintiff could not allege that the trademark infringement action concluded in its favor as the litigation was "on going." *Id.*

In supplemental briefing, Sproqit argued that its claims for tortious interference and defamation are not premature under *PG & E* and *Formula One* because, in those cases, the misconduct consisted of the actual filing of a lawsuit (or causing a lawsuit to be filed) whereas, in the instant case, "Sproqit alleges that Visto interfered with its prospective business relations by sending a letter *prior to filing any lawsuit* alleging without basis that Sproqit infringed two of Visto's patents." Def.'s Supp. Br. at 2 (emphasis in original). This distinction, however, is not material. The concern underlying *PG & E* and *Formula*

*One* was the need to assure free access to the courts, the same concern that underpines the litigation privilege under Civil Code § 47(b). As the cases interpreting § 47(b) to apply to prelitigation communications have found, this concern applies not only to statements made in the course of litigation but also to closely related prelitigation communications. For the same reasons why the litigation privilege of § 47(b) applies to prelitigation statements, the Court finds that the procedural conditions of *PG & E* apply thereto as well. This conclusion is bolstered by the fact that *PG & E* holds that the protection it created is not limited to the initiation of the lawsuit itself, but extends to a third party that induced the lawsuit through prelitigation communications.

The only question at this juncture is whether the procedural conditions of *PG & E* applies if the prelitigation communications were not made in good faith contemplation of litigation, circumstances under which the litigation privilege under § 47(b) would not apply. The Court concludes that in this case, *PG & E* applies regardless of whether § 47(b) would bar the suit. It does so for several reasons. First, there is a difference between the operative effects of the litigation privilege and the *PG & E* restrictions. The litigation privilege imposes an absolute bar. In contrast, *PG & E* defers suit until the underlying litigation is concluded in the proponent's favor. Second, where, as here, the counterclaim for intentional interference with prospective economic advantage is based the allegation that the prelitigation threats made false and defamatory claims of infringement, the merits of the underlying infringement suit are inextricably intertwined with the tort counterclaim. Sproqit cannot prevail on its interference claim unless it prevails in defeating the patent infringement suit. In contrast, the litigation privilege under § 47(b) turns on whether the prelitigation communications

were made in good faith contemplation of the suit, not on the merits of the legal claims threatened. Resolution of the underlying action has no utility to resolution of the counterclaim. Accordingly, applicability of the procedural conditions under *PG & E* is not coextensive with that of the § 47(b) privilege.

### III. *CONCLUSION*

The Court therefore grants Visto's motion to dismiss the counterclaims for tortious interference and defamation. At this stage of the proceedings, the claims are premature. This ruling does not preclude Sproqit from subsequently asserting such claims after the conclusion of the instant litigation on the merits of Visto's patent infringement suit, provided Sproqit can satisfy the requisites of both *PG & E* and the litigation privilege under Civil Code § 47(b).

For the foregoing reasons, the Court hereby grants the motion to dismiss without prejudice.

This order disposes of Docket No. 51.

IT IS SO ORDERED.