2017 COA 3

**Belinda A. BEGLEY & Robert K. Hirsch Revocable Trust, Robert K. Hirsch, and Belinda A. Begley, Plaintiffs-Appellants,**

**v.**

**Myrtle IRESON, Virginia Hoeckele, Andrew J. Gibbs, and GibbsYoung LLC, Defendants-Appellees.**

**Court of Appeals No. 15CA1494**

Colorado Court of Appeals,
Div. I.

Announced January 12, 2017

778

Peter R. Bornstein, Greenwood Village, Colorado, for Plaintiffs-Appellants

Gordon & Rees LLP, John R. Mann, Denver, Colorado; Jonsen Law Firm, LLC, Eric R. Jonsen, Broomfield, Colorado, for Defendants-Appellees Myrtle Ireson and Virginia Hoeckele

McElroy, Deutsch, Mulvaney & Carpenter, LLP, Glendon L. Laird, Kevin S. Hoskins, Englewood, Colorado, for Defendants-Appellees Andrew J. Gibbs and GibbsYoung LLC

Opinion by JUDGE ASHBY

¶ 1 Plaintiffs, Belinda A. Begley, Robert K. Hirsch, and the Belinda A. Begley and Robert K. Hirsch Revocable Trust, appeal the district court's dismissal of their complaint

alleging tortious interference with a contract and prospective contractual relations against defendants, Myrtle Ireson, Virginia Hoeckele, Andrew J. Gibbs, and GibbsYoung LLC. We reverse.

## I.  Background

¶ 2  Hirsch, Begley, and their joint trust (collectively Begley and Hirsch) own a residential property in Denver on which Hirsch and his wife Begley wish to build a new home. Ireson is their neighbor on one side and Hoeckele is their neighbor on the other.

¶ 3  Begley and Hirsch's architectural and engineering plans to demolish the old house on the property and build a new one were approved by the City and County of Denver. They contracted with a builder to undertake the project and the builder demolished the old house in September 2014. Several weeks later, on October 1, the builder began the shoring work that was a prerequisite to excavating the new basement.[1] But after October 2, the builder refused to do any further work on the project. Plaintiffs' complaint[2] alleged that during the period before demolition through mid-January 2015, Ireson, Hoeckele, and their attorney, Gibbs, made statements and complaints to Begley, Hirsch, and the builder that caused the builder to halt construction and breach the contract.

¶ 4  In late January 2015, plaintiffs filed claims against defendants alleging intentional interference with a contract and intentional interference with prospective contractual relations. Several days later, Ireson and Hoeckele filed their own suit against Begley and Hirsch, among others. Hoeckele moved to dismiss plaintiffs' complaint under C.R.C.P. 12(b)(5) for failure to state a claim upon which relief could be granted. Ireson and Gibbs joined in this motion. The motion argued that the defendants' allegedly tortious statements were made in anticipation of Ireson and Hoeckele's own suit against plaintiffs and were therefore absolutely privileged from any tort liability for interfering with contracts or contractual relations.

¶ 5  The district court apparently took judicial notice of Ireson and Hoeckele's separate suit against plaintiffs and granted the motion to dismiss. It ruled that (1) the complaint failed to allege that Ireson or Hoeckele made any statements that caused the builder to breach the contract and (2) Gibbs' statements were absolutely privileged based on Ireson and Hoeckele's later-filed suit.

¶ 6  Plaintiffs argue that these two rulings, and the resulting dismissal, were error. We agree.

## II.  District Court Erred by Dismissing Plaintiffs' Claims

¶ 7  Motions to dismiss for failure to state a claim under C.R.C.P. 12(b)(5) are viewed with disfavor. *See Bly v. Story*, 241 P.3d 529, 533 (Colo. 2010). We review a ruling on such a motion de novo, applying the same standards as the district court. *Id.*

¶ 8  A court properly dismisses a claim if the factual allegations in the complaint, taken as true and viewed in the light most favorable to the plaintiff, do not present plausible grounds for relief. *See Warne v. Hall*, 2016 CO 50, ¶¶ 9, 24, 373 P.3d 588.

### A.  Claims Against Ireson and Hoeckele

¶ 9  The district court first held that the complaint failed to state a claim against Ireson and Hoeckele because "there [wa]s no allegation that the supposedly unfounded complaints [lodged by Ireson and Hoeckele] caused [the builder] to cease performing." We conclude that this was error.

¶ 10  The complaint identified Ireson and Hoeckele as defendants. It alleged, among other things, that Ireson interfered with the contract by calling the City and County of Denver and fraudulently complaining about the placement of a construction fence, and that both Ireson and Hoeckele made "[c]omplaints and demands" about damage they said the builder had caused to their property "that were later admitted to be pre-existing." After listing other alleged interference by

---

1.  Shoring is designed to protect adjoining properties, the excavator, and the subject property during excavation.

2.  We understand that the relevant pleading is plaintiffs' amended complaint. We refer to it as the complaint here for the sake of simplicity.

Gibbs, the complaint stated that "[d]efendants' interference" caused the builder to ·fear that if it continued working on the project, it would be subject to increased ·scrutiny during inspections on other projects, expensive litigation, loss of reputation and future business, and increased insurance premiums. The complaint then alleged that the builder, "induced to do so by Defendants, breached the Contract."

¶ 11 We conclude that the complaint sufficiently alleged that Ireson and Hoeckele caused the builder to breach the contract. The complaint alleged specific conduct by Ireson and Hoeckele and then alleged that this conduct induced the builder to breach ·the contract. Nothing more is required to survive a motion to dismiss for failure to state a claim. *See Story v. Bly*, 217 P.3d 872, 876 (Colo. App. 2008) ("A complaint need not express a complete recitation of all facts that support the claim, but need only serve notice of the claim asserted."), *aff'd*, 241 P.3d 529 (Colo.2010). The district court therefore erred by dismissing the claims against Ireson and Hoeckele.

### B. Claims Against Gibbs

¶ 12 The district court next ruled that because Gibbs' statements and communications were made while he was representing Ireson and Hoeckele and were "in anticipation and in furtherance of litigation," they were absolutely privileged against the torts that plaintiffs alleged. We agree with plaintiffs that this was also error.

■ ¶ 13 Colorado courts have considered to what extent, and under what circumstances, an attorney's statements are protected by a litigation privilege because they are related to pending litigation. An attorney's defamatory statements, made in the course of, or in preparation for, judicial proceedings in a filed case cannot be the basis of a claim for intentional interference with a contract or prospective contractual relations if the statements are related to the litigation. *See Buckhannon v. U.S. W. Commc'ns, Inc.*, 928 P.2d 1331, 1335 (Colo. App. 1996) (addressing defamatory attorney statements made during trial preparation). Such statements are absolutely privileged against the

kinds of torts alleged by plaintiffs. *Id.* This litigation privilege exists to encourage and protect free access to the courts for litigants and their attorneys. *See Westfield Dev. Co. v. Rifle Inv. Assocs.*, 786 P.2d 1112, 1117 (Colo. 1990).

■ ¶ 14 In contrast, only a qualified litigation privilege applies to statements made as part of the initiation of litigation. In *Westfield*, our supreme court addressed whether the filing of a lis pendens, effectively a republication of a simultaneously filed complaint, was absolutely privileged against a claim of intentional interference with a contract. *Id.* There, two buyers were attempting to buy the same piece of land from a seller. *Id.* at 1114–15. After the first buyer executed a valid contract with the seller to buy the land, the second buyer, wrongfully believing that it had also executed a valid purchase contract with the seller, filed a complaint seeking specific performance of its (non-executed) contract as well as a notice of lis pendens. *Id.* at 1115. This caused the first buyer to believe that title to the property was unmerchantable and to back out of the contract. *Id.* The seller then sued the second buyer for tortiously interfering with its contract with the first buyer by filing the lis pendens. *Id.* at 1114.

■ ¶ 15 The supreme court recognized that in some jurisdictions filing a lis pendens is absolutely privileged. *Id.* at 1116. But, treating the lis pendens as merely a republication of the pleadings, the court explained that "the policy of encouraging free access to the courts which is the basis of an absolute privilege is outweighed by the intentional and improper interference with contract by means of litigation not brought in good faith." *Id.* at 1117. Accordingly, the court ruled that "a party has only a qualified privilege to interfere with an existing contract by means of initiating litigation and filing pleadings and notice of lis pendens." *Id.* This qualified litigation privilege applies when "(1) the interferer has, or honestly believes he has, a legally protected interest; (2) the interferer in good faith asserts or threatens to assert it; and (3) the assertion or threat is by proper means." *Id.* at 1118.

¶ 16 In both *Buckhannon* and *Westfield,* the attorney's statements (the filing of a lis pendens in *Westfield*) that were deemed protected by a litigation privilege were made after litigation had commenced or contemporaneously with the filing of a lawsuit. But no Colorado court has analyzed what kind of litigation privilege applies to an attorney's prelitigation statements. We conclude that extending the same protection to prelitigation statements as that applied to statements made during court proceedings could condone improper behavior while doing nothing to advance the goals of the litigation privilege (ensuring access to the courts and protection of attorneys during the course of client representation). If the same protection were to apply with equal force to prelitigation statements, an attorney could make a statement that tortiously interfered with a contract and then cloak it in the privilege by subsequently filing a bad faith and meritless claim related to the otherwise tortious statement. Such an outcome could not only encourage or protect attorneys who file bad faith litigation in order to immunize otherwise tortious conduct, it would also violate the supreme court's holding in *Westfield* that encouraging free access to the courts must be balanced against the intentional and improper interference with contract by means of bad faith litigation. *Id.* at 1117.

■ ¶ 17 We therefore conclude that for a litigation privilege to apply to an attorney's prelitigation statement, not only must that statement be related to prospective litigation, but the litigation must be contemplated in good faith. Whether this privilege is characterized as absolute or qualified is beside the point. Instead, what matters is that the privilege attaches only if the prelitigation statement is (1) related to prospective litigation and (2) the prospective litigation is contemplated in good faith.

¶ 18 Another division of this court, in a case cited by defendants, has stated exactly this. Although it did not analyze the good faith requirement, the division in *Merrick v. Burns, Wall, Smith & Mueller, P.C.,* 43 P.3d

712, 714 (Colo. App. 2001), stated, "[c]ommunications preliminary to a judicial proceeding are protected by absolute immunity only if they have some relation to a proceeding *that is actually contemplated in good faith.*" (Emphasis added.) [3] We believe that this approach appropriately balances, in accordance with *Westfield,* the competing interests of encouraging access to the courts and discouraging bad faith litigation that interferes with contracts.

¶ 19 Nevertheless, Gibbs argues that *Westfield* and its reasoning are inapposite here because the filing of a lis pendens, rather than statements made by an attorney, was the basis of the contractual interference in that case. Instead, Gibbs argues that we must follow section 586 of the Restatement (Second) of Torts (Am. Law Inst. 1977), which applies the litigation privilege without the good faith requirement articulated in *Westfield* and *Merrick.* According to Gibbs, Colorado courts have adopted this section of the Restatement (Second). We are not persuaded.

¶ 20 Section 586 of the Restatement (Second) provides:

> An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding.

A division of this court in *Club Valencia Homeowners Association, Inc. v. Valencia Associates,* 712 P.2d 1024, 1027 (Colo. App. 1985), stated that our supreme court had adopted this section of the Restatement (Second) in *Renner v. Chilton,* 142 Colo. 454, 351 P.2d 277 (1960). But neither *Renner,* nor any opinion cited in *Renner,* expressly or formally adopted this or any section of the Restatement (Second). *Id.* at 455, 351 P.2d at 277; *Glasson v. Bowen,* 84 Colo. 57, 59, 267 P. 1066, 1067 (1928) (cited by *Renner*).

---

**3.** We note that Gibbs incorporates, verbatim, this same sentence on page seventeen of his answer brief.

¶ 21 We agree with Gibbs that Colorado courts have applied a litigation privilege without a good faith requirement—the substantive rule articulated in section 586—to statements made after litigation has commenced. *See Buckhannon*, 928 P.2d at 1333 (investigator employed by defendant's in-house counsel made privileged statements in the course of investigating personal injury claim plaintiff had already filed against defendant); *Club Valencia*, 712 P.2d at 1025 (attorney's statements in a letter responding to claims for breaches of express and implied warranty that had already been filed were privileged). But Gibbs has cited no Colorado authority, and we are aware of none, applying a litigation privilege with no good faith requirement to prelitigation statements. And even if we agreed with Gibbs that section 586 had been adopted in its entirety in Colorado and therefore applied to prelitigation statements, the privilege would nevertheless include a requirement that the prospective litigation be contemplated in good faith. Comment e to section 586 of the Restatement (Second) states that

> [a]s to communications preliminary to a proposed judicial proceeding the rule stated in this Section applies only when the communication has some relation to a proceeding *that is contemplated in good faith and under serious consideration. The bare possibility that the proceeding might be instituted is not to be used as a cloak to provide immunity for defamation when the possibility is not seriously considered.*

(Emphasis added.)

¶ 22 We recognize that defendants cite at least one opinion from another jurisdiction in which a court has applied the litigation privilege to prelitigation statements without the good faith requirement. *See Pinto v. Internationale Set, Inc.*, 650 F.Supp. 306, 308–09 (D. Minn. 1986) (applying Minnesota and California law). But other non-Colorado opinions cited by defendants have held that the good faith requirement is a prerequisite for application of the privilege. *See Sriberg v. Raymond*, 370 Mass. 105, 345 N.E.2d 882, 884 (1976) ("Where a communication to a prospective defendant relates to a proceeding which is contemplated in good faith and

which is under serious consideration, it is our view that the privilege should attach.").

¶ 23 Ultimately, we conclude that in order for the litigation privilege to attach to an attorney's prelitigation statement, the litigation must not only be related to the statement but must be contemplated in good faith. This conclusion is an application of the *Merrick* division's explicit statement to that effect and a logical extension of the supreme court's reasoning in *Westfield*. It is also consistent with section 586 of the Restatement (Second) and its comments.

¶ 24 When the district court analyzed whether a privilege applied in this case, it did not address whether Ireson and Hoeckele's prospective lawsuit against plaintiffs was contemplated in good faith. And because plaintiffs alleged that all of the interfering statements occurred before Ireson and Hoeckele filed their suit, the district court erred by failing to apply the good faith requirement.

¶ 25 We are also unable to determine, based on the record before us and the procedural posture of the case, whether the privilege applies here. Because this is an appeal from a ruling on a C.R.C.P. 12(b)(5) motion to dismiss, we must accept as true all of the factual allegations in the complaint. *See Warne*, ¶ 9. And based on these allegations, we are unable to determine whether Ireson and Hoeckele's suit was contemplated in good faith.

### III. Conclusion

¶ 26 The district court's judgment dismissing plaintiffs' complaint is reversed. The case is remanded with directions for the court to conduct further proceedings consistent with this opinion.

JUDGE TAUBMAN and JUDGE DUNN concur.