FILED
**United States Court of Appeals**
**Tenth Circuit**

**June 21, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

VIVOS THERAPEUTICS, INC.,

    Plaintiff - Appellee,

v.

ORTHO-TAIN, INC.,

    Defendant - Appellant.

No. 21-1309
(D.C. No. 1:20-CV-01634-WJM-SKC)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **BALDOCK**, and **EID**, Circuit Judges.
_____

In this interlocutory appeal, Ortho-Tain, Inc. (OT), challenges a district court order denying its motion to dismiss based in part on absolute immunity. OT also invokes our pendent appellate jurisdiction to review other non-final rulings in the district court's order. To the extent the denial of immunity turns on a legal question, we have jurisdiction under the collateral order doctrine and reverse and remand for further proceedings. We dismiss the balance of the appeal for lack of jurisdiction.

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.   Background

The parties are competing manufacturers of dental devices.  According to the amended complaint and attached exhibits, in April 2020, OT's CEO, Leslie Stevens, sent a letter to Benco Dental Supply, which is an affiliate of Vivos Therapeutics, Inc., accusing Benco of hosting seminars where Vivos misrepresented OT's products as its own.  In a series of communications that followed (collectively, the "Spring 2020 Communications"), OT's lawyer, Nathan Neff, repeatedly stated that Vivos and Benco were violating state and federal law, including the Lanham Act, 15 U.S.C. § 1125(a), which provides a cause of action for false advertising, *see Bimbo Bakeries USA, Inc. v. Sycamore*, 29 F.4th 630, 643 (10th Cir. 2022).  Neff demanded that Benco notify seminar attendees of the alleged misrepresentations, cited legal authority for OT's position, and at least implicitly, if not explicitly, threatened legal action.  Indeed, on June 1, 2020, Neff sent Benco a draft complaint, which he later filed (with revisions) in the Northern District of Illinois, naming Vivos and Benco as defendants.  And in a June 3 letter captioned, "Settlement Discussions – Lanham Act Violations," Aplt. App. at 224, Neff asserted he was "privileged to defame" so long as his statements related to the proposed legal claims, *id.* at 226.

Vivos filed this suit several days later, asserting claims for libel per se, slander per se, intentional interference with contractual relations, and declaratory relief that it had not violated the Lanham Act.  The following month, OT filed its complaint in the Northern District of Illinois against Vivos, Benco, and others.  Thereafter, the district court here dismissed Vivos's complaint with leave to amend.  Meanwhile, in

December 2020, OT's sales department sent emails ("December 2020 emails") to dentist-clients of Vivos, disparaging Vivos and its products. Consequently, when Vivos filed its amended complaint, it reasserted its previous claims and added two new claims for violations of the Lanham Act and the Colorado Consumer Protection Act (CCPA). The following lists Vivos's claims and the conduct upon which they were predicated:

Count 1: Lanham Act based on the December 2020 emails (and other online material).

Count 2: CCPA based on the December 2020 emails.

Count 3: Libel per se based on the Spring 2020 Communications and the December 2020 emails.

Count 4: Slander per se based on the Spring 2020 Communications.

Count 5: Intentional interference with contractual relations based on the Spring 2020 Communications and the December 2020 emails.

Count 6: Declaratory judgment that it had not violated the Lanham Act.

OT moved to dismiss, contending it had absolute immunity from any claims based on the Spring 2020 Communications because they related to the Northern District of Illinois litigation and as such were privileged. OT also argued that the claims under the Lanham Act and the CCPA should be dismissed or stricken as improper supplemental pleadings, that the entire amended complaint should be dismissed for impermissibly incorporating allegations into subsequent counts, and that the declaratory judgment claim should be dismissed as an improper anticipatory filing intended to preempt the Northern District of Illinois litigation. The district court rejected OT's arguments, denied the motion to dismiss, and directed the parties

3

to schedule a status conference.  Instead, OT filed this appeal.  Vivos then moved to dismiss this appeal for lack of jurisdiction.  The parties have fully briefed the jurisdictional and merits issues.  The Northern District of Illinois litigation has been stayed pending the outcome of this appeal and the underlying district court action or until the Northern District of Illinois removes the stay.

## I.  Appellate Jurisdiction

We first consider our jurisdiction.  Generally, an order denying immunity qualifies for immediate review under the collateral order doctrine to the extent it turns on an issue of law.  *See Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985).  Indeed, in *Robinson v. Volkswagenwerk AG*, we recognized that the collateral order doctrine permits immediate appellate review of an interlocutory order denying a motion to dismiss based on a claim of absolute immunity under the litigation privilege.  *See* 940 F.2d 1369, 1370 (10th Cir. 1991).  We therefore proceeded to the merits and observed that "[a]ll lawyers are protected by an absolute privilege against defamation actions based upon litigation conduct in judicial proceedings."  *Id.* at 1372.

OT invokes essentially the same litigation privilege recognized in *Robinson*.  Ordinarily, we would have jurisdiction to review this type of interlocutory appeal from the district court's denial of immunity.[1]  However, "[i]f a district court cannot

---

[1] In challenging OT's analogy to the qualified immunity context, Vivos contends the denial of immunity is not immediately appealable because OT's assertion of immunity does not extend to all of its claims.  *See* Mot. to Dismiss at 8-9; Mot. to Dismiss Reply Br. at 5-6.  But even in the qualified immunity context, the "right to immunity is a right to immunity *from certain claims*, not from litigation in general; when immunity with respect to those claims has been finally denied,

4

rule on the merits of [an] . . . immunity defense at the dismissal stage because the allegations in the pleadings are insufficient as to some factual matter, the district court's determination is not immediately appealable." *Weise v. Casper*, 507 F.3d 1260, 1264 (10th Cir. 2007).

Here, the district court rejected OT's immunity claim in part because the pleadings were insufficient to make a predicate factual determination. Distinguishing between the letter written by OT's CEO, Leslie Stevens, and the communications from OT's attorney, Nathan Neff, the district court determined that the litigation privilege protects an attorney's prelitigation statements only if they relate to litigation contemplated in good faith. *See Begley v. Ireson*, 399 P.3d 777, 781 (Colo. App. 2017) ("[F]or a litigation privilege to apply to an attorney's prelitigation statement, not only must that statement be related to prospective litigation, but the litigation must be contemplated in good faith."). Yet the district court declined to make any finding as to Neff's good faith, stating, "[g]iven that this action is at the pleading stage, and that the Court must construe the allegations in the light most favorable to Vivos, the Court declines to delve into the factfinding endeavor of whether [Neff] made these communications in good faith contemplation of litigation." Aplt. App. at 351-52. Although the district court did not expressly say the pleadings were inadequate to make a finding as to good-faith, it noted the good-faith requirement and declined to make the necessary factual finding. Clearly, then, the district court found

---

appeal must be available, and cannot be foreclosed by the mere addition of other claims to the suit," *Behrens v. Pelletier*, 516 U.S. 299, 312 (1996).

the pleadings insufficient.  It follows that the denial of immunity for Neff's statements does not turn on a legal question and thus it is not immediately appealable.  *See Weise*, 507 F.3d at 1264.  Accordingly, we dismiss the appeal to the extent it challenges that ruling.  However, as explained below, we retain jurisdiction to review the denial of immunity for Stevens' letter because that ruling turned solely on a legal question.

## II.   Immunity

The district court denied immunity as to Stevens' statements, reasoning that, under Colorado law, the litigation privilege does not apply to non-attorney parties. We review de novo this legal determination regarding the applicability of absolute immunity.  *Robinson*, 940 F.2d at 1370.  Because the relevant claims arise under diversity jurisdiction, we apply Colorado law to resolve the immunity question.  *See Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014); *see also Aspen Orthopaedics & Sports Med., LLC v. Aspen Valley Hosp. Dist.*, 353 F.3d 832, 837 (10th Cir. 2003) ("[S]tate law governs the applicability of immunity to state law claims." (internal quotation marks omitted)).

Colorado has adopted the Restatement (Second) of Torts, both as to attorneys, § 586; *see BKP, Inc. v. Killmer, Lane & Newman, LLP*, 506 P.3d 84, 90 (Colo. App. 2021), and parties, § 587; *see Dep't of Admin. v. State Pers. Bd.*, 703 P.2d 595, 597-98 (Colo. App. 1985).  Under § 586 of the Restatement:

> An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a

6

part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding.

Similarly, under § 587 of the Restatement:

A party to a private litigation or a private prosecutor or defendant in a criminal prosecution is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as a part of, a judicial proceeding in which he participates, if the matter has some relation to the proceeding.

In accord with these provisions, statements made before or during a judicial proceeding are privileged so long as they are related to the proceeding, and claims sounding in defamation for such statements are barred. *See Club Valencia Homeowners Ass'n, Inc. v. Valencia Assocs.*, 712 P.2d 1024, 1025-26, 1028 (Colo. App. 1985) (letter written jointly by attorney and his client relating to litigation privileged, barring libel claims); *Buckhannon v. U.S. W. Commc'ns, Inc.*, 928 P.2d 1331, 1333-35 (Colo. App. 1996) (statements by corporate defendant's investigator, attributed to the defendant, absolutely privileged regardless of tort theory); *Dep't of Admin.*, 703 P.2d at 597-98 (statements by party to administrative proceeding absolutely privileged). The Colorado Court of Appeals has cautioned, however, that "extending the same protection to prelitigation statements as that applied to statements made during court proceedings could condone improper behavior while doing nothing to advance the goals of the litigation privilege (ensuring access to the courts and protection of attorneys during the course of client representation)." *Begley*, 399 P.3d at 781. The *Begley* court was concerned that "an attorney could make a statement that tortiously interfered with a contract and then cloak it in the

7

privilege by subsequently filing a bad faith and meritless claim related to the otherwise tortious statement." *Id.* Consequently, the court ruled that "for a litigation privilege to apply to an attorney's prelitigation statement, not only must that statement be related to prospective litigation, but the litigation must be contemplated in good faith." *Id.* But this good-faith requirement applies to attorneys and parties alike. *See* Restatement § 586 cmt. e (explaining that application of the privilege as to attorneys is proper "only when the communication has some relation to a proceeding that is contemplated in good faith and under serious consideration"); *id.* § 587 cmt. e (same as to parties).

Here, the district court rejected OT's immunity claim for Stevens' letter, ruling that only attorney statements are privileged. The district court also faulted OT for failing to cite controlling authority demonstrating that the privilege applies to statements by non-attorney parties. But OT cited both sections of the Restatement, *Club Valencia*, *Department of Administration*, and *Buckhannon*, all of which confirm that the privilege can apply to both attorneys and parties. *See, e.g.*, *Club Valencia*, 712 P.2d at 1027-28 (affirming dismissal of libel claim brought against two parties and attorney, recognizing the privilege applied to their letter because the purpose of the privilege "is to afford *litigants* the utmost freedom of access to the courts . . . and to protect *attorneys* during the course of their representation of clients" (emphasis added)). The district court concluded otherwise, relying on another district court case, which in turn quoted *Begley*'s statement that the litigation privilege protects "'*an attorney's* defamatory statements.'" *ClearCapital.com, Inc. v. Computershare,*

8

*Inc.*, No. 18-cv-00817-RBJ, 2019 WL 1573300, at *3-4 (D. Colo. Apr. 11, 2019) (unpublished) (brackets omitted) (quoting *Begley*, 399 P.3d at 780).  But *Begley* should not be read so narrowly because it involved an attorney who was a named defendant. *See* 399 P.3d at 780.  *Begley* itself recognized that the "litigation privilege exists to encourage and protect free access to the courts *for litigants and their attorneys*." *Id.* (emphasis added).  And without restricting its analysis to attorneys, *Begley* observed that statements made by "a party" or one who interferes with a contract can be privileged.  *Id.* (internal quotation marks omitted).

Accordingly, because the privilege can apply to attorneys and parties alike, the district court should have analyzed all of the Spring 2020 Communications, including Stevens' letter and Neff's follow-up communications, together.  Under that analysis, the relevant inquiry is whether OT's Spring 2020 Communications related to the Northern District of Illinois litigation and whether that litigation was contemplated in good faith.  We thus remand to the district court for proper analysis.

### III.  Pendent Jurisdiction

Finally, OT invokes our pendent jurisdiction to review the district court's other interlocutory rulings:  (1) refusing to dismiss Counts 1 and 2 under the Lanham Act and the CCPA as unauthorized supplemental pleadings, (2) refusing to dismiss the entire amended complaint for impermissibly incorporating allegations to support multiple claims, and (3) refusing to dismiss Count 6 as an improper anticipatory filing.  We conclude that none of these issues warrant review under our pendent jurisdiction.

Exercise of pendent jurisdiction is discretionary and "*only* appropriate in either of two scenarios:  (1) when the otherwise nonappealable decision is inextricably intertwined with the appealable decision, or (2) where review of the nonappealable decision is necessary to ensure meaningful review of the appealable one."  *Cummings v. Dean*, 913 F.3d 1227, 1235 (10th Cir. 2019) (internal quotation marks omitted).  Given these limited scenarios, pendent jurisdiction is "generally disfavored" where, as here, the underlying appeal involves an interlocutory question of immunity brought under the collateral order doctrine, which "is premised on the ability to decide the . . . immunity issue in isolation from the remaining issues of the case."  *Id.* (internal quotation marks omitted).

Neither scenario exists here.  The interlocutory rulings are not inextricably intertwined with the question of OT's immunity.  *See id.* at 1236 ("A pendent claim may be considered 'inextricably intertwined' only if it is coterminous with, or subsumed in, the claim before the court on interlocutory appeal—that is, when the appellate resolution of the collateral appeal *necessarily* resolves the pendent claim as well." (some internal quotation marks omitted)).  And review of the interlocutory rulings is unnecessary to ensure meaningful review of the immunity question.  Indeed, our foregoing analysis confirms it is not.  *See id.*  We therefore decline to exercise pendent jurisdiction over the district court's remaining interlocutory rulings.

## V.  Conclusion

Vivos's motion to dismiss this appeal is denied in part and granted in part.  To the extent the denial of immunity turned on a question of law, the district court's

decision is reversed and remanded for further proceedings.  To the extent the denial

of immunity turned on the factual inadequacy of the record, we dismiss the appeal.

We decline to exercise pendent jurisdiction over the balance of this appeal.

                                        Entered for the Court

                                        Allison H. Eid
                                        Circuit Judge