Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's
homepage at http://www.courts.state.co.us. Opinions are also
posted on the Colorado Bar Association's homepage at
http://www.cobar.org.

ADVANCE SHEET HEADNOTE
September 11, 2023

## 2023 CO 47

**No. 21SC930, *Killmer, Lane & Newman, LLP v. BKP, Inc.* — Litigation Privilege — Defamation — Statements of Counsel — Class Actions.**

In this case, the supreme court considers whether the common law litigation privilege for party-generated publicity in pending class action litigation excludes situations in which the identities of class members are ascertainable through discovery.

The court now concludes that the division erred in conditioning the applicability of the litigation privilege in pending class action litigation on whether the identities of class members are ascertainable through discovery. The court further concludes that the five allegedly defamatory statements at issue, which merely repeated, summarized, or paraphrased the allegations made in the class action complaint, and which served the purpose of notifying the public, absent class members, and witnesses about the litigation, were absolutely privileged.

Accordingly, the court reverses the judgment of the division below.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2023 CO 47

**Supreme Court Case No. 21SC930**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 20CA298

### Petitioners:

Killmer, Lane & Newman, LLP; Mari Newman; and Towards Justice,

v.

### Respondents:

BKP, Inc.; Ella Bliss Beauty Bar LLC; Ella Bliss Beauty Bar-2, LLC; and Ella Bliss Beauty Bar-3, LLC.

### Judgment Reversed
*en banc*
September 11, 2023

**Attorneys for Petitioners Killmer, Lane & Newman, LLC and Mari Newman:**
Treece Alfrey Musat P.C.
Reza D. Rismani
 *Denver, Colorado*

Killmer, Lane & Newman, LLP
Thomas Kelley
 *Denver, Colorado*

**Attorneys for Petitioner Towards Justice:**
Law Offices of Brian D. Gonzales, PLLC
Brian D. Gonzales
 *Fort Collins, Colorado*

Harter Secrest & Emery LLP
Brian M. Feldman
*Rochester, New York*

**Attorneys for Respondents:**
Sherman & Howard LLC
Brooke A. Colaizzi
Raymond M. Deeny
Heather Fox Vickles
John T. Melcon
*Denver, Colorado*

**Attorneys for Amicus Curiae Colorado Defense Lawyers Association:**
Gordon Rees Scully Mansukhani LLP
John M. Palmeri
John R. Mann
*Denver, Colorado*

**Attorneys for Amici Curiae Colorado Press Association, Colorado Broadcasters Association, Colorado Freedom of Information Coalition, Gannett Co., Inc., and American Civil Liberties Union Foundation of Colorado**:
Hutchinson Black and Cook, LLC
Matthew A. Simonsen
Daniel D. Williams
*Boulder, Colorado*

Tierney Lawrence Stiles LLC
Edward T. Ramey
*Denver, Colorado*

**Attorneys for Amicus Curiae Colorado Trial Lawyers Association:**
Martinez Law Colorado, LLC
Anna N. Martinez
*Denver, Colorado*

Martinez Law, LLC
Esteban A. Martinez
*Longmont, Colorado*

**Attorneys for Amici Curiae Impact Fund, Colorado Cross-Disability Coalition, Disability Law Colorado, Legal Aid at Work, Public Counsel, and Public Justice:**
Fox & Robertson, PC
Amy F. Robertson
        *Denver, Colorado*

**JUSTICE GABRIEL** delivered the Opinion of the Court, in which **CHIEF JUSTICE BOATRIGHT**, **JUSTICE MÁRQUEZ**, **JUSTICE HOOD**, **JUSTICE HART**, **JUSTICE SAMOUR**, and **JUSTICE BERKENKOTTER** joined.

JUSTICE GABRIEL delivered the Opinion of the Court.

¶1    In this case, we granted certiorari to consider whether the common law litigation privilege for party-generated publicity in pending class action litigation excludes situations in which the identities of class members are ascertainable through discovery.

¶2    We now conclude that the division erred in conditioning the applicability of the litigation privilege in pending class action litigation on whether the identities of class members are ascertainable through discovery. We reach this conclusion for two reasons. First, ascertainability is generally a requirement in class action litigation, and imposing such a condition would unduly limit the privilege in this kind of case. Second, the eventual identification of class members by way of documents obtained during discovery is not a substitute for reaching absent class members and witnesses in the beginning stages of litigation.

¶3    The question remains, however, whether the litigation privilege applies on the facts before us. We conclude that it does and that the five allegedly defamatory statements at issue, which merely repeated, summarized, or paraphrased the allegations made in the class action complaint, and which served the purpose of notifying the public, absent class members, and witnesses about the litigation, were absolutely privileged.

¶4    Accordingly, we reverse the judgment of the division below.

4

## I. Facts and Procedural History

¶5    In 2018, two law firms, Killmer, Lane & Newman, LLP and Towards Justice (collectively, along with attorney Mari Newman of Killmer, Lane & Newman, "the attorneys"), filed on behalf of former employee and nail technician Lisa Miles and those similarly situated a federal class action lawsuit. This lawsuit named as defendants BKP, Inc.; Ella Bliss Beauty Bar LLC; Ella Bliss Beauty Bar-2, LLC; and Ella Bliss Beauty Bar-3, LLC (collectively, "the employer"), among others. The employer operates three beauty bars in the Denver metropolitan area.

¶6    Pertinent here, the class action complaint alleged that the employer's business operation was "founded on the exploitation of its workers." In support of this assertion, the class action complaint alleged that, in violation of the Fair Labor Standards Act and the Colorado Wage Claim Act, the employer

> did not pay Lisa Miles or any of the other Service Technicians at any of its three stores *any amount whatsoever* for the hours that they spent cleaning and performing other mandatory chores. In fact, [the employer] did not employ janitors or a cleaning service and relied exclusively on the unpaid labor of its nail technicians and other Service Technicians to clean the salon.

¶7    The class action complaint further alleged that the employer exercised substantial control over the terms and conditions of the service technicians' work and "co-determined the policies, procedures, and rules, including those relating to compensation, benefits, and hours" governing the service technicians.

¶8 In addition, the class action complaint alleged a number of purported illegal pay practices, including a failure to pay for downtime, a failure to pay for pre- and post-shift work, the withholding of tips to compel service technicians to finish their additional "chores," and the failure to pay contractually mandated commissions, all of which resulted in unpaid overtime.

¶9 Lastly, the class action complaint alleged that the class members were "low-wage, hourly workers . . . who are unsophisticated, are unlikely to seek legal representation, cannot realistically navigate the legal system pro se, and whose small claims make it difficult to retain legal representation if they do seek it."

¶10 On the same day that the federal lawsuit was filed, Newman spoke at a press conference and made the following four statements:

> For no pay whatsoever, they [i.e., the service technicians] have to clean the business, including the bathrooms, because Ella Bliss Beauty Bar is simply too cheap to pay its workers the money they deserve.

> Instead of paying the workers for every hour that they work they [i.e., the employer] pick and choose and only pay for the hours they feel like paying.

> It is time for businesses to quit financially exploiting women. Oppression of vulnerable workers remains all too common, and this is a particularly audacious case.

> It's [i.e., conduct like that alleged is] fairly common in industries that employ populations they think they can take advantage of, like women or immigrants.

¶11 The attorneys also issued a press release that, in addition to repeating the third statement quoted above, stated, "Ella Bliss Beauty Bar forced its service technicians to perform janitorial work without pay, refused to pay overtime, withheld tips, and shorted commissions."

¶12 At least two Denver-based television stations aired stories that included video clips from the press conference, and at least four Denver-based news organizations printed stories about the press conference. In each such story, the media repeated one or more of the above-quoted statements.

¶13 Exactly one year later, the employer sued the attorneys in Denver district court, asserting that the five aforementioned statements were defamatory and intentionally interfered with contractual relations. The attorneys responded by moving to dismiss the employer's claims pursuant to C.R.C.P. 12(b)(5), arguing, among other things, that the suit was barred by the litigation privilege. Ultimately, the district court dismissed the employer's complaint without addressing the litigation privilege.

¶14 The employer appealed, and a division of the court of appeals reversed the district court's dismissal order. *BKP, Inc. v. Killmer, Lane & Newman, LLP*, 2021 COA 144, ¶ 81, 506 P.3d 84, 100. The division began its analysis by discussing the litigation privilege, as described in the Restatement (Second) of Torts section 586 (Am. L. Inst. 1977) ("Section 586"), case law from Colorado discussing the scope of

the litigation privilege, and case law from other jurisdictions discussing the extent to which the litigation privilege applies to attorney press statements. *BKP, Inc.*, ¶¶ 14–36, 506 P.3d at 90–93. Based on its reading of these authorities, the division assumed without deciding that "even if Colorado were one of the states that would generally deny the litigation privilege to any and all statements that lawyers make to the press," the cases on which the attorneys relied "would create a narrow exception to that general rule for some statements concerning class action cases." *Id.* at ¶ 37, 506 P.3d at 93. The division ultimately concluded, however, that this narrow exception did not extend to press statements concerning class action lawsuits when, as here, the class action complaint "undermine[d] the *need* to engage in that form of communication." *Id.* at ¶ 40, 506 P.3d at 94.

¶15 On this last point, the division explained that the attorneys' purported purpose in speaking at the press conference and issuing the press release was to promote their class action and potentially reach service technicians who had worked for the employer, so that such technicians "could join the suit as class members or additional class representatives, step forward as witnesses, or pursue the claims themselves outside the class action." *Id.* at ¶ 39, 506 P.3d at 93. In the division's view, however, the class action complaint undermined this stated purpose because it alleged that "[t]he exact size of the class will be *easily ascertainable* from [the employer's] records" and "[t]he contours of the class will be

8

*easily defined* by reference to the payroll documents [the employer was] legally required to create and maintain." *Id.* at ¶ 41, 506 P.3d at 94 (alterations in original) (quoting the class action complaint). If this were so, the division reasoned, then there would be no "need" to communicate with the public and potential class members and witnesses through the press. *Id.* at ¶ 40, 506 P.3d at 94. Specifically, because "the attorneys had a 'feasible way' of figuring out who in their audience had an interest in the case," given the class action complaint's allegation that "finding the nail technicians who had an interest in the case would be 'easy,'" the attorneys had "no rational reason to make the statements to the general public." *Id.* at ¶¶ 42–43, 506 P.3d at 94. Accordingly, the division concluded that the litigation privilege did not apply. *Id.* at ¶ 42, 506 P.3d at 94.

¶16 The attorneys petitioned this court for certiorari review, and we granted their petition.

## II. Analysis

¶17 We begin by discussing the applicable standard of review and the litigation privilege, as that privilege is defined in Section 586. We then discuss and reject the "ascertainability exception" to the litigation privilege that the division adopted and applied. Finally, we consider whether the litigation privilege, when properly construed, applies to the facts before us, and we conclude that it does.

## A. Standard of Review and Applicable Law

¶18 The applicability of the litigation privilege presents a question of law that we review de novo. *Belinda A. Begley & Robert K. Hirsch Revocable Tr. v. Ireson* ("*Begley II*"), 2020 COA 157, ¶ 12, 490 P.3d 963, 968; *Club Valencia Homeowners Ass'n v. Valencia Assocs.*, 712 P.2d 1024, 1027 (Colo. App. 1985).

¶19 Although we do not appear to have spoken on the issue, the majority of other jurisdictions, including divisions of our court of appeals, to have considered the litigation privilege appear to have adopted the articulation of that privilege that is set forth in Section 586. *See, e.g.*, *BancPass, Inc. v. Highway Toll Admin., L.L.C.*, 863 F.3d 391, 401 (5th Cir. 2017) ("In nearly every state, . . . courts rely on the formulation of the privilege in the Restatement (Second) of Torts."); *Belinda A. Begley & Robert K. Hirsch Revocable Tr. v. Ireson* ("*Begley I*"), 2017 COA 3, ¶ 21, 399 P.3d 777, 782 ("Colorado courts have applied a litigation privilege without a good faith requirement—the substantive rule articulated in section 586—to statements made after litigation has commenced."); *Club Valencia*, 712 P.2d at 1027 (applying Section 586).

¶20 The parties here appear to agree that Section 586 recites the prevailing articulation of the privilege. And they further appear to agree that "[t]he purpose of this privilege . . . is to afford litigants the utmost freedom of access to the courts to preserve and defend their rights and to protect attorneys during the course of

10

their representation of clients." *Club Valencia*, 712 P.2d at 1027; *see also* Section 586 cmt. a ("The privilege stated in this Section is based upon a public policy of securing to attorneys as officers of the court the utmost freedom in their efforts to secure justice for their clients. Therefore the privilege is absolute."). We also agree, and thus, we will apply Section 586's articulation of the privilege here.

¶21 Section 586 provides:

> An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding.

¶22 To be privileged, then, the statement at issue must have "some reference to the subject matter of the proposed or pending litigation, although it need not be strictly relevant to any issue involved in it." Section 586 cmt. c; *accord Club Valencia*, 712 P.2d at 1027. Thus, "[t]he pertinency required is not technical legal relevancy, but rather a general frame of reference and relation to the subject matter of the litigation." *Club Valencia*, 712 P.2d at 1027. Accordingly, "the privilege embraces anything that possibly may be relevant." *Id.*

¶23 As the division below explained in articulating the concerns to which the privilege is directed, a rule permitting a defendant in a civil action to institute "parallel litigation seeking to impose liability" on a plaintiff's lawyer could lead to "adverse consequences includ[ing] impairing colorable claims by 'disrupting

11

access to counsel,' intimidating counsel with 'an almost certain retaliatory proceeding,' distracting counsel by forcing counsel to 'defend[] a personal countersuit' as well as the original lawsuit, and 'dampening . . . the unobstructed presentation of claims.'" *BKP, Inc.*, ¶ 15, 506 P.3d at 90 (alterations in original) (quoting *Rubin v. Green*, 847 P.2d 1044, 1050 (Cal. 1993)).

¶24 The privilege, however, is not without limits. As noted above, to fall within the privilege's protection, the statements at issue must have "some relation to the subject matter of the . . . litigation." *Club Valencia*, 712 P.2d at 1028. In addition, the statements must be "made in furtherance of the objective of the litigation." *Id.* And although the litigation privilege may encompass statements that an attorney makes "prior to trial such as conferences and other communications preliminary to the proceeding," *id.* at 1027, it applies to such pre-litigation statements "only if they have some relation to a proceeding that is actually contemplated in good faith," *Merrick v. Burns, Wall, Smith & Mueller, P.C.*, 43 P.3d 712, 714 (Colo. App. 2001). Thus, an attorney cannot make a defamatory statement and then "cloak it in the privilege by subsequently filing a bad faith and meritless claim related to the otherwise tortious statement." *Begley I*, ¶ 16, 399 P.3d at 781.

¶25 Finally, in light of the privilege's above-described purpose, although an attorney's publication of defamatory statements that are "plainly irrelevant and impertinent" would not be privileged, any doubts about whether a statement is

12

privileged "should be resolved in favor of its relevancy or pertinency." *Club Valencia*, 712 P.2d at 1027; *see also id.* ("No strained or close construction will be indulged to exempt a case from the protection of privilege."). Attorneys do, however, remain accountable to the tribunals in which they appear for improper statements that they make, and attorneys may face sanctions or disciplinary action for violations of applicable court rules and rules of professional conduct in connection with their public statements. *See, e.g.*, *People v. Ellis*, 526 P.3d 958, 959, 962 (Colo. O.P.D.J. 2023) (approving the parties' stipulation to discipline for an attorney who violated the Colorado Rule of Professional Conduct by "repeatedly mak[ing] misrepresentations on national television and on Twitter" regarding the 2020 presidential election).

¶26 Having thus set forth the applicable law, we turn to the issues before us.

## B. No Ascertainability Exception

¶27 The attorneys first assert that the division below erred in concluding that the litigation privilege did not apply in this case because the attorneys had alleged in the class action complaint that the "exact size" and "contours" of the class would be "*easily ascertainable* from [the employer's] records" and "payroll documents," thereby undermining any need to speak with the press and issue the press release. *BKP, Inc.*, ¶¶ 41–42, 506 P.3d at 94 (alteration in original). We agree with the attorneys and conclude that conditioning the applicability of the litigation

13

privilege on whether class counsel has alleged that the class is ascertainable is unworkable in practice and would unduly limit the litigation privilege in class action cases. We reach this conclusion for two reasons.

¶28    First, in the context of class action litigation, "ascertainability" has a specific meaning. It refers to the requirement that a proposed class be defined by objective criteria "so that it is administratively feasible to ascertain whether or not a particular individual is a member of the class." *BP Am. Prod. Co. v. Patterson*, 263 P.3d 103, 114 (Colo. 2011); *accord Jackson v. Unocal Corp.*, 262 P.3d 874, 887 (Colo. 2011). Notably, many federal courts, including the District of Colorado in which the underlying class action lawsuit was filed, require that the class be ascertainable, even though "ascertainability" is not specifically mandated by Rule 23 of the Federal Rules of Civil Procedure. *See, e.g.*, *Warnick v. Dish Network LLC*, 301 F.R.D. 551, 555 (D. Colo. 2014) ("[A]lthough not specifically mentioned in Rule 23, there must be an ascertainable class."); *see also Sandusky Wellness Ctr., LLC v. MedTox Sci., Inc.*, 821 F.3d 992, 996 (8th Cir. 2016) ("It is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable.") (quoting *Ihrke v. N. States Power Co.*, 459 F.2d 566, 573 n.3 (8th Cir. 1972), *vacated as moot*, 409 U.S. 815 (1972)); *Brecher v. Republic of Arg.*, 806 F.3d 22, 24 (2d Cir. 2015) ("Like our sister Circuits, we have recognized an 'implied requirement of ascertainability' in Rule 23 of the

14

Federal Rules of Civil Procedure.") (quoting *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 30 (2d Cir. 2006)); *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 592–93 (3d Cir. 2012) ("Many courts and commentators have recognized that an essential prerequisite of a class action, at least with respect to actions under Rule 23(b)(3), is that the class must be currently and readily ascertainable based on objective criteria.").

¶29     In light of this requirement, it is unsurprising that the attorneys alleged in the class action complaint that the class would be ascertainable, and we cannot agree that such an allegation removed the case from the protection that the litigation privilege affords for public statements like those at issue. If it did, then the efficacy of the privilege would be substantially diminished in class action litigation. We, however, perceive no basis for limiting the privilege in this way.

¶30     Second, when, as here, the purpose of making the press statements was to promote the class action lawsuit and to contact unknown potential class members early in the litigation, it is immaterial whether the attorneys expected the class to be ascertainable from the employer's business records. Although the division perceived "no rational reason" for the attorneys to use the press to promote the class action and reach absent class members given the allegation that the class would be "*easily ascertainable*" from the employer's records and payroll documents, *BKP, Inc.*, ¶¶ 41, 43, 506 P.3d at 94, the division appears to have

overlooked the fact that at the time the attorneys made the statements at issue, the employer's records and payroll documents would not yet have been available to the attorneys. Indeed, the parties do not appear to dispute that such records are not typically available to class counsel until discovery, which occurs later in the litigation process. And as the attorneys argue, the eventual identification of class members by way of documents obtained during discovery is not a substitute for reaching absent class members and witnesses in the beginning stages of litigation when class counsel is shoring up their pleadings, locating additional class representatives, planning discovery, and crafting litigation strategy. Accordingly, early outreach through the press can benefit a class action regardless of whether it will ultimately be "easy" to ascertain the class members from the employer's records and documents that will be produced later during discovery.

¶31 For these reasons, we conclude that the division erred in adopting and applying an ascertainability exception to defeat the protections of the litigation privilege in this case.

¶32 In reaching this conclusion, we are not persuaded by the trio of cases from other jurisdictions, *Norman v. Borison*, 17 A.3d 697 (Md. 2011), *Helena Chem. Co. v. Uribe*, 281 P.3d 237 (N.M. 2012), and *Simpson Strong-Tie Co. v. Stewart, Estes & Donnell*, 232 S.W.3d 18 (Tenn. 2007), on which the employer relies. Specifically, the employer argues that these cases stand for the proposition that the litigation

16

privilege applies only to "large-scale" class action and mass-tort cases in which there are no feasible or economical means of reaching potential class members (i.e., only when the class is not readily ascertainable). For several reasons, we disagree.

¶33 First, contrary to the employer's attempt to cabin the reasoning of these cases to "large-scale" class action and mass-tort cases, neither the reasoning of, nor the conclusions reached in, these cases turned or even relied on the scale or size of the class. Rather, all three cases turned on whether the statements were made by counsel during the course of and were related to an ongoing (or proposed) court proceeding. *See Norman*, 17 A.3d at 701, 716–18 (concluding that the litigation privilege extended to an attorney's republication of the class action pleadings as well as to the attorney's public comments about that case because the statements served to notify potential class members of the contemplated proceeding, were made in the course of that proceeding, and were sufficiently related to the subject matter of the complaint); *Helena Chem. Co.*, 281 P.3d at 239 ("[T]he absolute privilege doctrine applies to pre-litigation statements made by attorneys in the presence of the press, *if* (1) the speaker is seriously and in good faith contemplating class action or mass-tort litigation at the time the statement is made, (2) the statement is reasonably related to the proposed litigation, (3) the attorney has a client or identifiable prospective client at the time the statement is made, and (4) the statement is made while the attorney is acting in the capacity of counsel or

17

prospective counsel."); *Simpson Strong-Tie*, 232 S.W.3d at 20 ("[A]n attorney is privileged to publish what may be defamatory information prior to a proposed judicial proceeding even when the communication is directed at recipients unconnected with the proposed proceeding. In order for the privilege to apply, (1) the communication must be made by an attorney acting in the capacity of counsel, (2) the communication must be related to the subject matter of the proposed litigation, (3) the proposed proceeding must be under serious consideration by the attorney acting in good faith, and (4) the attorney must have a client or identifiable prospective client at the time the communication is published.").

¶34 Second, neither *Norman*, *Helena Chemical Co.*, nor *Simpson Strong-Tie* considered or discussed whether class counsel in those cases had alleged that the class was "ascertainable." Nor did any of those cases consider or address whether it would have been feasible to use the defendant's business records to identify potential class members. In *Norman*, as here, however, class counsel had alleged in their class certification memorandum that the "[c]lass can be identified from the Defendants' own records." Pls.' Mem. in Support of Pls.' Amended Mot. to Certify a Class Against the Defs. at 43, *Proctor v. Metro. Money Store Corp.*, No. 07-cv-01957-RWT, Doc. 151-1 (D. Md. Nov. 14, 2008). Accordingly, nothing in these cases supports an assertion that if the class could be identified from the

18

defendant's records, then the litigation privilege is inapplicable. The cases, in fact, suggest the opposite conclusion.

¶35 Third, contrary to the employer's assertion, the courts in *Norman*, *Helena Chemical Co.*, and *Simpson Strong-Tie* each seemed to recognize that when a class action complaint is, or is about to be, filed, reaching potential litigants through the press is consistent with the purpose of the litigation privilege. *See Norman*, 17 A.3d at 715–18 (concluding that class counsel was absolutely privileged to republish the class action pleadings the day after the action was filed and to make allegedly defamatory statements in the press in connection with the lawsuit because republishing or reporting on the pleadings served a "judicially-cognizable purpose—the notification of potential class members of ongoing litigation, in which they may have a stake"); *Helena Chem. Co.*, 281 P.3d at 245–46 (concluding that class counsel was absolutely privileged to make allegedly defamatory press statements both before and after filing a toxic tort lawsuit because, "[i]n the context of class action or mass-tort litigation, the most economical and feasible method of informing potential litigants of prospective litigation affecting their interests may be through the press"); *Simpson Strong-Tie*, 232 S.W.3d at 26 (concluding that class counsel was absolutely privileged to make allegedly defamatory statements in the press and on the internet in connection with a proposed but not yet filed class action lawsuit because "limiting the privilege" to exclude such public statements

could "inhibit potential parties or witnesses from coming forward and impede the investigatory ability of litigants or potential litigants, thereby undermining the reasons for the privilege").

¶36 For these reasons, we conclude that the authority on which the employer relies is inapposite on the issue of ascertainability and, if anything, supports the applicability of the privilege in the present context.

¶37 Having concluded that the division erred in adopting and applying an ascertainability exception to the litigation privilege, the question remains whether the litigation privilege applies to the five press statements at issue. We turn to that question next.

## C. Application

¶38 As noted above, Section 586 provides that attorneys are "absolutely privileged" to publish defamatory statements "in the institution of, or during the course and as a part of, a judicial proceeding" in which they participate as counsel if the statements (1) have "some relation to the subject matter of the . . . litigation," and (2) are "made in furtherance of the objective of the litigation." *Club Valencia*, 712 P.2d at 1027–28.

¶39 Here, although the attorneys urge us to adopt a broad, bright-line rule that would *always* allow defamatory statements in the context of announcing a class action, we need not — and, thus, do not — adopt such a rule. Instead, we can decide

20

this case more narrowly, by considering whether, on the facts before us, the allegedly defamatory statements had some relation to and were made in furtherance of the objective of the class action litigation. We have little difficulty concluding that they did.

¶40 As an initial matter, we agree with the division's observations that, "[i]n this case, the statements made at the press conference and in the press release merely described the federal lawsuit" and "the statements and the press release were simply a means of publicizing it." *BKP, Inc.*, ¶ 52, 506 P.3d at 95. Accordingly, on their face, the statements had some relation to the subject matter of the litigation. *See, e.g.*, *Helena Chem. Co.*, 281 P.3d at 246 (concluding that statements made to the press that summarize, republish, repeat, or explain the allegations of a class action complaint are absolutely privileged).

¶41 In addition, and related to our first point, we agree with the view of the majority of jurisdictions to have considered the issue that attorney press statements that merely repeat and explain a class action complaint serve to notify the public, absent class members, and witnesses about the litigation, thereby furthering the object of the litigation. *See Norman*, 17 A.3d at 716 & n.23 (explaining that "[b]y republishing or reporting on" class action pleadings, "the press could be seen as a tool assisting in the notification to potential class members of the contemplated proceedings," which may legitimately be seen as "a step in

21

the administration of justice"); *Helena Chem. Co.*, 281 P.3d at 246–47 (concluding that statements made to the press that summarized a filed complaint "furthered the object of th[e] mass-tort litigation by educating others in the affected community about the need for and availability of legal representation"); *Simpson Strong-Tie*, 232 S.W.3d at 20, 26 (concluding that the litigation privilege applies to what may be defamatory statements in the newspaper and on the internet soliciting clients in anticipation of litigation because precluding such communications might inhibit "potential parties or witnesses from coming forward" and "impede the investigatory ability of litigants or potential litigants").

¶42 Here, as in the above-described cases, all of the statements at issue merely repeated, summarized, or paraphrased allegations in the class action complaint. Accordingly, they served to notify the public, absent class members, and witnesses about, and therefore furthered the objective of, the litigation.

¶43 For example, Newman's statement at the press conference that "[f]or no pay whatsoever, they [i.e., the service technicians] have to clean the business, including the bathrooms, because Ella Bliss Beauty Bar is simply too cheap to pay its workers the money they deserve" summarizes the allegation in the class action complaint that the employer

> did not pay Lisa Miles or any of the other Service Technicians at any of its three stores *any amount whatsoever* for the hours that they spent cleaning and performing other mandatory chores. In fact, [the employer] did not employ janitors or a cleaning service and relied

22

exclusively on the unpaid labor of its nail technicians and other Service Technicians to clean the salon.

¶44 Similarly, Newman's statement that, "[i]nstead of paying the workers for every hour that they work they [i.e., the employer] pick and choose and only pay for the hours they feel like paying" paraphrases the class action complaint's allegations that the employer (1) exercised substantial control over the terms and conditions of the work of the service technicians and "co-determined the policies, procedures, and rules, including those relating to compensation, benefits, and hours" governing the service technicians; and (2) engaged in a number of illegal pay practices, including a failure to pay for downtime and pre- and post-shift work, the withholding of tips, and the failure to pay contractually mandated commissions, all of which resulted in unpaid overtime.

¶45 Newman's statements, repeated in the press release, that "[i]t is time for businesses to quit financially exploiting women" and that "[o]ppression of vulnerable workers remains all too common, and this is a particularly audacious case" correspond to the class action complaint's allegations that (1) the employer's business operation was "founded on the exploitation of its workers" and (2) the class members were "low-wage, hourly workers . . . who are unsophisticated, are unlikely to seek legal representation, cannot realistically navigate the legal system pro se, and whose small claims make it difficult to retain legal representation if they do seek it."

23

¶46 Finally, Newman's statement that conduct like that alleged in the class action complaint is "fairly common in industries that employ populations they think they can take advantage of, like women or immigrants" likewise corresponds to the just-noted class action complaint's allegations.

¶47 Because the allegedly defamatory statements at issue had some relation to and were made in furtherance of the objective of the class action litigation, we conclude that these statements were privileged. And because this case presents no issue as to whether defamatory press statements that go beyond the allegations of the complaint are actionable, we need not—and do not—express any opinion on that inherently fact-dependent issue.

¶48 In so concluding, we necessarily reject the employer's assertion that the litigation privilege excludes *all* statements made by lawyers in press conferences or press releases. On this point, we acknowledge that *Green Acres Trust v. London*, 688 P.2d 617, 619 (Ariz. 1984), on which the employer heavily relies, reaches a conclusion contrary to ours. In that case, on facts similar to those present here, the court determined that the attorney's statements were not privileged because the "recipient" of the allegedly defamatory statements was a newspaper reporter who "had no relation to the proposed class action." *Id.* at 614. We respectfully disagree with our sister court's determination that the "recipient" of the attorney press statements in that case was the newspaper reporter, rather than the public, as well

as with that court's ultimate conclusion, which we believe expresses a minority view among the jurisdictions to have considered the issue before us today.

## III.  Conclusion

¶49    For these reasons, we conclude that the division below erred in adopting and applying an ascertainability exception to preclude the application of the common law litigation privilege in the present case.  We further conclude that, on the facts before us, the statements at issue, which merely repeated, summarized, or paraphrased allegations made in the class action complaint, and which served the purpose of notifying the public, absent class members, and witnesses about the litigation, were protected by the litigation privilege.

¶50    Accordingly, we reverse the judgment of the division below, and we remand this case for further proceedings consistent with this opinion.